### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                         Case No.

and                                            Hon.

*Ex. Rel.* STACY GOLDSHOLL,

                Plaintiff/Relator,

v.

COVENANT HEALTHCARE SYSTEM,
a Domestic Nonprofit Corporation,
and COVENANT MEDICAL CENTER
a Domestic Nonprofit Corporation.

                Defendants.

**QUI TAM ACTION - FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**DO NOT ENTER ON PACER**

---

DAVID M. BLANCHARD (P67190)
NACHT, ROUMEL, SALVATORE
BLANCHARD & WALKER, P.C.
Attorney for Relator Stacy Goldsholl
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
dblanchard@nachtlaw.com

---

**<u>FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

## Introduction

1.      Dr. Stacy Goldsholl ("Relator" or "Dr. Goldsholl") brings this action on behalf of the United States of America against Defendants for treble damages and civil penalties arising from the Defendants' false statements and false claims in violation of the False Claims Act, 31 U.S.C. §3729 et seq.

2.      The complaint details violations of the Federal anti-kickback law, 42 U.S.C. § 1320(a)-7(b) as well as the Stark Anti-Referral Law, 42 U.S.C. § 1395nn.

3.      Defendants Covenant HealthCare System and Covenant Medical Center (collectively referred to as "Covenant") are engaged in multiple practices that violate these statutory provisions.   In general, these practices reward known top referral sources with compensation, remuneration and other favorable business arrangements inconsistent with fair-market value.

4.      First, Defendants provide Medical Director and other titles to top referral sources where the compensation is not consistent with the fair market value of the labor provided by the physician.  In return, the physician provides referral business to Covenant.

5.      Second, the Defendants provide high referring physicians with employees that are paid by the Defendants to assist with services or call coverage for the physicians.  The physicians are essentially "gifted" these services without paying for them or providing labor to the Defendants.  In return for the remuneration that does not meet fair market value; the physician provides referral business to Covenant.

6.      Third, as a form of illegal remuneration, Defendants pay the overhead costs of independent physicians as a gift for referring a significant volume of patients to Covenant.  The physicians do not perform any work to justify the large reimbursements of overhead costs paid

by Defendants, making the financial arrangement not at fair market value in violation of Stark and anti-kickback laws.

7.      Fourth, the Defendants bill Medicare and Medicaid for services they provide where no supervisory physicians are on location at Defendants' infusion center location in violation of state and federal health care regulations.

8.      Last, Defendants distribute money they receive from Health Plus (a Michigan health and wellness organization that provides healthcare through Medicare and Medicaid) to compensate physicians who are high referral sources through the practices described above.  In accordance with the Stark Act, Covenant must not pay physicians above fair market value with funds it receives from Michigan Health Plus.  Defendants use the practices outline above to regularly provide compensation and remuneration to physicians (which do not meet fair market value) who provide business referrals to Covenant.  As such, Defendants are violating the Stark Act and anti-kickback laws.

## Jurisdiction and Venue

9.      This action arises under the False Claims Act, 31 U.S.C. §3729 et seq.  This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b).  This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1331.

10.      Venue is proper in the Eastern District pursuant to 31 U.S.C. §3732(a), because the acts proscribed by 31 U.S.C. §3729 et seq. and complained of herein took place in this District, and is also proper pursuant to 28 U.S.C. §1391, because at all times material and relevant, Defendants transact and transacted business in this District.

## The Parties

11.     Stacy Goldsholl is a citizen and resident of the State of Michigan.  She is an "original source" of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B) but states that to her knowledge the information contained herein concerning Defendants' alleged False Claims Act violations has not been publicly disclosed

12.     Dr. Goldsholl is a former employee of Defendants.  Ms. Goldsholl most recently served as the Vice President of Covenant HealthCare and CEO of Covenant Medical Group.  She served in that position since January 2012.  Previously, Ms. Goldsholl also served as Chief Medical Officer and Executive Administrator from August 2010 through January 2012 for Covenant Medical Group.

13.     In her various positions at Covenant, Relator was involved in the formation, integration, and incorporation of the Covenant Medical Group as a subsidiary of the Covenant Healthcare System.  Ms. Goldsholl was directly involved in the oversight of clinical integration encompassing both employed and independent physicians.  As such, Ms. Goldsholl was privy to information regarding mid-level provider recruitment, contracting, and compensation for employed and independent physicians of Covenant.

14.     Relator is an original source of this information to the United States.  She has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under the False Claims Act which is based on the information.

15.     The United States, through the Department of Health and Human Services ("HHS"), administers the federal Medicare program, which is a health insurance program funded

by taxpayer revenue.  Medicare assists state governments with the payment for medical services to persons over the age of 65 and others who qualify under the Medicare program.

16.     Defendants, Covenant HealthCare System and Covenant Medical Center are domestic not-for-profit companies operating in the east central Michigan region.  Covenant is a comprehensive health care system "providing a broad spectrum of programs and services" for patients and houses over 623 acute care beds Covenant was incorporated in 1997 with a registered office in Saginaw, Michigan. Defendants are one of the largest health systems in Michigan, with a hospital Saginaw, and office locations in Saginaw, Bay City, Midland, and Frankenmuth.  Defendants also have numerous outpatient facilities through the mid-Michigan region.

### Statutory Requirements the Provide Basis for Relator's Claim

17.     The Stark Act bans Medicare payment to an entity for "designated health services" (DHS) when they are referred by physicians who have a financial relationship with the entity (unless an exception applies).     42 U.S.C. § 1395nn(a).  Under §1395nn(a)(1)(A), a physician may not refer Medicare patients to an entity for "designated health services," including inpatient and outpatient hospital services, if the referring physician has a nonexempt "financial relationship" with such entity. Under § 1395nn(a)(1)(B), the entity is prohibited from presenting or causing to be presented a Medicare claim for services furnished pursuant to a prohibited referral.

18.     The Anti-Kickback Act prevents receiving or paying any remuneration based on a referral for any medical services covered by a Federal health care plan.  See 42 U.S.C. § 1320(a)-7(b).

19.     Falsely certifying compliance with the Stark or Anti-Kickback Acts in connection with a claim submitted to a federally funded insurance program is actionable under the False Claims Act.

20.     The False Claims Act provides that any person who knowingly submits a false or fraudulent claim to the Federal Government for payment or approval is liable to the government for a civil penalty of not less than $5,500 and not more than $11,000 for each claim, plus three times the actual damages that the government sustained.  31 U.S.C. §3729(a).  The Act also permits assessment of the civil penalty even without proof of specific damages.

21.     For the reasons stated below, Defendants have, in reckless disregard or in deliberate ignorance of the truth or the falsity of the information involved, made or used false or fraudulent records and statements in order to get false or fraudulent claims paid or approved. Such conduct violates the False Claims Act.  31 U.S.C. §3729(a)(1) and (a)(2).

22.     This conduct primarily relates to a knowing disregard of the requirements of the anti-kickback statute and the Stark Act as evidenced in a series of repeated transactions that run afoul of those laws and make any Medicare or Medicaid payment received on the basis of those laws unlawful.

23.      Defendants have a number of different practices in place designed to provide independent and employed physicians compensation in excess of fair market value in violation of both the Stark Act and Anti-kickback laws.  Defendants reward these independent physicians through a number of financial schemes for referring a significant number of patients to Covenant.  The financial relationships existing between the Defendants and independent physicians do not meet any relevant exceptions under the Stark Law.  Defendants continue to bill Medicare for services referred by independent doctors and entities with which they have

financial relationships and to whom they provide illegal remunerations beyond fair market value and in violation of the Anti-Kickback and Stark Acts.

24.    As such, any money received from Medicare and Medicaid for services that were referred by those independent physicians who have tainted financial or compensation relationships to Defendants constitute a False Claim to the government.

## I.    DEFENDANTS REGULARLY PROVIDE MEDICAL DIRECTOR AND OTHER TITLES TO TOP REFERRAL SOURCES WHERE THE COMPENSATION FAR OUTSTRIPS THE MARKET VALUE OF LABOR PROVIDED

25.    Defendants have engaged in a consistent practice of rewarding top-referral sources with medical directorships and other "perk" appointments where they are required to perform little, if any, work in return for compensation.

26.    Relator has knowledge that Defendants have tracked high referring physicians with the goal of rewarding them with directorship positions and titles with compensation. These high referral sources receive remuneration from Defendants and do not render services requisite with that remuneration.

27.    As a result, these financial relationships do not fall within the Stark law exception, which requires the Defendants to pay "fair market value" to fit within the exception for this type of compensation arrangement. Therefore, any referral made from these doctors to Covenant that is billed to Medicare or Medicaid represents a false claim.

28.    Relator has direct knowledge of instances where high referring independent physicians are rewarded Medical Directorships or other titles as a means of remuneration to induce referrals.   Relator knows of multiple specialists who are receiving thousands of dollars for Medical Directorships without documenting the identified Directorship services for Covenant.

29.     Independent physicians are also provided with the opportunity to receive additional revenue through the allocation of "fictional directorships" this tactic was also used as a means of enticing new physician recruits and enabled Defendants to supplement compensation above fair market rate.

30.      Defendants awarded one physician a Medical Directorship which resulted in Defendants paying her thousands of dollars. Defendants appointed Dr. Sugimoto the title of Assistant Trauma Medical Director which entitles her to $80,000 per year.

31.     Dr. Sugimoto was not required to document any hours of activity that would demonstrate that she was performing work for her Medical Directorship.  No logs have been kept by Defendant and no oversight was done to verify that Dr. Sugimoto was performing any work to account for the additional $80,000 in compensation she received as Medical Director.

32.     Dr. Sugimoto did not perform the services identified with this Medical Directorship.

33.     Dr. Wohaibi, a bariatric surgeon, was provided significant funding under the guise of "recruitment" in order to keep him as a happy referral source.

34.     Defendants did not require physicians performing administrative services for Defendant to log, record or otherwise document the time they spent performing services for Covenant Health.

35.     As an additional bonus above the identified compensation for the "Director position," these "Directors" also receive significant stipends that are not accounted for in the identified compensation and effectively increase the remuneration Defendants provide high referring physicians.

36.    To provide medical directorships and other remuneration in direct return for high-volume referrals creates a financial relationship between the Defendants and physicians which is intended to induce referrals.

37.    The Stark act prohibits Defendants from billing for the designated health services referred by Physicians with whom they have a prohibited financial or compensation relationship unless they are able to comply with a relevant exception.

38.    Defendants were not paying fair market value for the services provided by physicians acting as Medical Directors.  The practice of awarding "perk" Directorships at above fair market value compensation to high referring doctors does not meet the relevant exception under the Stark Act.

39.    These arrangements are not commercially reasonable and did not provide Covenant with legitimate and necessary services. Instead, the appointments and related salaries these and other doctors receive from Covenant are merely a reflection of the value they provide to Covenant as referral sources.

40.    Any billing done by Covenant for patients that were referred by these and other doctors with improper relationships are false claims as the relationships are not in compliance with the Fraud and Abuse law or the Stark Act.

II.    **DEFENDANTS RETAIN EMPLOYEES TO ASSIST INDEPENDENT PHYSICIANS AND SPECIALISTS WITH THEIR OWN INDEPENDENT BILLING AS A FORM OF REMUNERATION FOR HIGH REFERRALS**

41.    In an attempt to please independent specialists who refer a significant number of patients to Covenant, Defendants will provide their employees' services to independent specialists as additional resources for the specialists.

42.    Covenant paid employees perform physician assistant services, recruitment, or call coverage for private physicians.

43.    Covenant covers all the costs associated with staffing these employees and does not charge the physician for this benefit.

44.    The practice of staffing independent specialist offices with Covenant paid employees provides no benefit to Covenant except to maintain positive relations with specialists who are high referral sources for the hospital.

45.    In one particular case, Covenant was trying to keep a particular specialist who was a high referral source happy, and they provided him with Covenant employees to help provide work flow efficiencies to allow him complete his delinquent medical record documentation.

46.    Dr. Steve Jensen, a private Urologist was given a Covenant employed Physicians' Assistant (PA) to support him administratively.

47.    Defendants provided Dr. Jensen with this PA to catch him up administratively so he could focus on generating more referrals to Covenant.

48.    Dr. Jensen was never billed by Covenant for the services provided by the employed physician.

49.    Dr. Thomas Damuth (private pulmonary/critical care doctor) was also given the services of Covenant employee without charge.

50.    Defendants placed an employed pulmonologist, Dr. Gerald Pruitt, in Damuth's office to help cover his practice.

51.    This arrangement was explicitly created to reward Dr. Damuth for switching his referral hospital from St. Mary's to Covenant Health Care. Defendant only provided Dr. Damuth

and Dr. Jensen Covenant employees as a form of remuneration for making referrals to Covenant Health.

52.     Dr. Jensen and Dr. Damuth did not have any written agreement with Defendants for the provision of these services or expect any reimbursement for the services provided.

53.     Defendants also provide employed physicians to staff the independent medical practices of Dr. Ron Bayes, Vascular Surgeon and Dr. Ron Berry, a Plastic Surgeon, as a form of remuneration for referring a significant volume of patients to Covenant.

54.     Defendants' provision of employed staff to physicians are a direct form of remuneration whose intent is to increase the physician's loyalty to Defendants and to encourage patient referrals.

55.     This is a violation of the Medicare Fraud and Abuse Act. Additionally, the practice creates financial relationships between the parties that do not comply with a Stark law exception.

56.     Any billing for designated health services by Defendants, which are the result of a referral from these physicians, is a violation of the Stark Law.

57.     Any Medicare and Medicaid billings for patients that came from these referrals represent a False Claim.

## III.   DEFENDANTS PAY FOR PHYSICIAN OVERHEAD COSTS AS A FORM OF COMPENSATION

58.     Contrary to anti-kickback law and the Stark Act, Defendants pay for overhead costs incurred by independent specialists and physicians that do not meet the fair market value as required by law.

59.     As a matter of practice, Defendants will take almost any action to embed a well-known independent specialist or physician as a permanent referral source to Covenant.  Relator

has direct knowledge of Defendants paying significant monthly overhead costs for doctors hosting embedded employed physicians in their private practices where the amount given to the physicians to pay for such costs is inflated

60.    Through a purchased service agreement, Defendants pay Dr. Tom Damuth $15,000 a month to cover the cost of his office support to employed physician Dr. Gerald Pruitt.

61.    In exchange, Dr. Pruitt is required to work directly in Dr. Demuth's practice.

62.    Dr. Pruitt only works a total of 8 hours per week in Dr. Damuth's practice.

63.    The compensation that Defendants provide to Dr. Damuth is in excess of fair market value given the small amount of time doctor Pruitt actually works in Dr. Damuth's practice.

64.    Defendants are overcompensating Dr. Damuth to keep him as a referral source to the hospital.

65.    Additionally, Defendants overcompensate independent doctors by covering their overhead costs, effectively increasing the take home pay of independent physicians.

66.    In the case of Dr. Pruitt, Defendants were also covering his overhead costs despite the lack of work done for Covenant.

67.    Dr. Pruitt was not paying for administrative staff and only utilizing the space for a total of eight hours per week, Defendants were grossly overpaying the employed physician overhead costs.

68.    The inflated cost was paid to the private physician to keep him happy so he would continue to refer a large number of patients to Covenant.

69.     Defendants are overpaying for costs associated with the purchased service agreement and overhead costs, so the arrangement does not reflect fair market value for the actual work that independent physicians are performing on behalf of Covenant.

70.     Covenant continued to bill Medicare and Medicaid for services provided to these referrals, in violation of the Anti-Kickback Act and the Stark Act.  Covenant's continued billing based on referrals from these sources are all false claims.

71.     The purchased service agreements provide these doctors their (support staff) at above market rates, contrary to the Anti-Kickback Act and the Stark law.  These "agreements" that outstrip fair market value are provided to doctors that are high referral sources.

72.     These arrangements violate the Anti-Kickback Act and Stark Act, any referrals from these doctors to Covenant that were billed to Medicare and Medicaid represent False Claims.

## IV.   DEFENDANTS USED FUNDS FROM HEALTH PLUS TO COMPENSATE PHYSICIANS ABOVE FAIR MARKET VALUE

73.     Health Plus is a Michigan health and wellness organization that provides health care coverage through Medicare and Medicaid.

74.     Covenant's Physicians' Organization (PO) Primary Care Partners and Covenant Healthcare Partners (PHO) takes money they receive from Michigan Health Plus and forward the money to Covenant physicians who are also members of the PO (Primary Care Partners).

75.     Health Plus money effectively enters through the PO and makes it way to Covenant which then uses the funds to pay employed physicians above their base salary.  In accordance with the Stark Act, Covenant must not pay physicians above fair market value with funds it receives from Michigan Health Plus.

13

## V.   DEFENDANTS BILL FOR SERVICES EVEN THOUGH THEY ARE NOT SUPERVISED AS REQUIRED

76.     Defendants regularly certify that there is a supervisory physician on location at Defendants' infusion center and infusion provided at the employed oncologist, Dr. Jacob Ninan, office's location.

77.     In reality, there was no supervisory physician even on the same floor of the infusion center or outpatient office infusion site at the Defendants' Mackinaw facility.

78.     Defendants have not had any contracts with physicians who work at the infusion locations indicating that they are supervisors prior to 2012.

79.     Nurses and physicians at the infusion center are encouraged to contact an anesthesiologist on the floor below the infusion center should an emergency arise.  This practice adversely affects the quality of care provided to patients in the infusion center, but it also in violation of state and federal health care regulations.

80.     Without a supervisory physician on location at the infusion centers, any billing to Medicare and Medicaid by Defendants is fraudulent.  These services require a supervisory physician, and are not reimbursable if one is not available.

81.     Defendants also bill for Nurse Practitioner services in their Urgent Care clinics in violation of Medicare and Medicaid regulations.  Specifically, Medicare regulations require that Nurse Practitioners perform in collaboration with physicians.  Defendants have no collaborative agreements in place between physicians and Nurse Practitioners in violation of 42 CFR 410: 75.

## COUNT I:
## VIOLATION OF ANTI-KICKBACK AND STARK LAW THROUGH MEDICAL DIRECTOR POSITIONS AND TITLES TO REFERRAL SOURCES

82.     Relator re-alleges and incorporates the allegations of paragraphs 1-81 as if fully set forth herein.

14

83.     Defendants violated both the Anti-Kickback Act and the Stark law and continued to submit billing to Medicare and Medicaid for referrals based on its awarding "perk" Medical Director Positions and other titles with compensation to referring physicians.

84.     Defendants falsely certified that they were in compliance with relevant Medicare regulations and that they had complied with the Anti-Kickback Act and the Stark law.

85.     Covenant has billed Medicare and Medicaid for services provided to patients referred by independent physicians, even though it was impermissibly providing a benefit to these physicians and specialist in return.

86.     Defendants made these misrepresentations to obtain payment funds to which they would otherwise not have been entitled.

87.     This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

88.     The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, was damaged to the extent that these funds paid for services not reimbursable by Medicare.

**COUNT II:**
**VIOLATION OF ANTI-KICKBACK AND STARK LAW BY RETAINING EMPLOYEES TO ASSIST INDEPENDENT PHYSICIANS AS A FORM OF REMUNERATION**

89.     Relator re-alleges and incorporates the allegations of paragraphs 1-88 as if fully set forth herein.

90.     Defendants violated both the Anti-Kickback Act and the Stark law and continued to submit billing to Medicare and Medicaid for referrals based on financial relationships wherein the Defendants provide independent physicians with employees paid by Covenant to assist with their own private practices.

91.     Defendants falsely certified that they were in compliance with relevant Medicare regulations and that they had complied with the Anti-Kickback Act and the Stark law.

92.     Covenant has billed Medicare and Medicaid for services provided to patients referred by independent physicians, even though it was impermissibly providing a benefit to these physicians and specialists in  return.

93.     Defendants made these misrepresentations to obtain payment funds to which they would otherwise not have been entitled.

94.     This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

95.     The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, was damaged to the extent that these funds paid for services not reimbursable by Medicare.

## COUNT III:
## VIOLATION OF ANTI-KICKBACK ACT AND STARK LAW BY PAYING OVERHEAD COST FOR INDEPENDENT PHYSICIANS ABOVE FAIR MARKET VALUE

96.     Relator re-alleges and incorporates the allegations of paragraphs 1-95 as if fully set forth herein.

97.     Defendants violated both the Anti-Kickback Act and the Stark Law and continued to submit billing to Medicare and Medicaid for referrals based on its paying of overhead costs for high referring physicians that does not reflect fair market value for the amount of work provided by physicians.

98.     Defendants falsely certified that they were in compliance with relevant Medicare regulations and that they had complied with the Anti-Kickback Act and the Stark law.

99.     Covenant has billed Medicare and Medicaid for services provided to patients referred by independent physicians, even though it was impermissibly providing a benefit to these physicians and specialist in return.

100.     Defendants made these misrepresentations to obtain payment funds to which they would otherwise not have been entitled.

101.     This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

102.     The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, was damaged to the extent that these funds paid for services not reimbursable by Medicare.

**COUNT IV:**
**VIOLATION OF ANTI-KICKBACK ACT AND STARK LAW THROUGH THE USE OF**
**HEALTH PLUS FUNDS TO COMPENSATE PHYSICIANS**
**ABOVE FAIR MARKET VALUE**

103.     Relator re-alleges and incorporates the allegations of paragraphs 1-102 as if fully set forth herein.

104.     Defendants violated both the Anti-Kickback Act and the Stark law and continued to submit billing to Medicare and Medicaid for referrals based on improper financial relationships between Defendants and independent physicians that are not exempt under the Stark Act.

105.     Defendants falsely certified that they were in compliance with relevant Medicare regulations and that they had complied with the Anti-Kickback Act and the Stark law.

106.     Covenant has billed Medicare and Medicaid for services provided to patients referred by independent physicians, even though it was impermissibly providing a benefit to these physicians and specialist in return.

107.     Defendants made these misrepresentations to obtain payment funds to which they would otherwise not have been entitled.

108.     This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

109.     The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, was damaged to the extent that these funds paid for services not reimbursable by Medicare.

<u>**COUNT V:**</u>
**<u>VIOLATION OF ANTI-KICKBACK ACT AND STARK LAW THROUGH
LACK OF SUPERVISION AT INFUSION CENTER</u>**

110.     Relator re-alleges and incorporates the allegations of paragraphs 1-109 as if fully set forth herein.

111.     Defendants violated both the Anti-Kickback Act and the Stark law and continued to submit billing to Medicare and Medicaid for services that were provided to patients when no supervisory physician was on location or was contracted to supervise the infusion center.

112.     Defendants falsely certified that they were in compliance with relevant Medicare regulations and that they had complied with the Anti-Kickback Act and the Stark law.

113.     Covenant has billed Medicare and Medicaid for services provided to patients referred by independent physicians, even though it was impermissibly providing a benefit to these physicians and specialists in return.

114.     Defendants made these misrepresentations to obtain payment funds to which they would otherwise not have been entitled.

115.     This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

116.    The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, was damaged to the extent that these funds paid for services not reimbursable by Medicare.

**COUNT VI:**
**CONSPIRACY TO COMMIT FALSE CLAIMS**

117.    Relator re-alleges and incorporates the allegations of paragraphs 1-116 as if fully set forth herein.

118.    As stated above, Defendants have entered numerous illegal arrangements with high-valued referral sources.

119.    In return for valuable referrals, Defendants offer various perks to the referral source, in violation of the Anti-Kickback Act and Stark Law.

120.    These parties knowingly entered into an agreement to violate the Anti-Kickback Act and Stark Law with the intention of then allowing Defendants to bill Medicare for the impermissibly obtained referrals.

121.    This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(C).

122.    The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, was damaged to the extent that these funds paid for services not reimbursable by Medicare.

**COUNT VII:**
**MICHIGAN MEDICAID FALSE CLAIMS ACT-PRESENTATION**

123.    Plaintiff realleges and reincorporates paragraphs 1-122 as if fully set forth herein.

124.    In performing the acts described above, Defendants through their own actions or through the acts of their officers, knowingly presented, or caused to be presented, to an officer or

employee of the State of Michigan, a false claim under the Michigan Medicaid False Claims Act in violation of MCLA 400.601 et seq.

**COUNT VIII:**
**<u>FAILURE TO REPORT OR RETURN MEDICARE OVERPAYMENTS</u>**
**<u>(Against All Defendants)</u>**

125.    Plaintiff realleges and incorporates the previous paragraphs by reference.

126.    As described above, Defendants received overpayments from the United States government by submitting reimbursement claims for services which were the result of improper financial relationships and ineligible for reimbursement.

127.    Defendants had knowledge of or had identified that overpayments were made to it since at least the time that Relator raised concerns about Defendants' practices in 2012.

128.    Defendants failed to report or return the overpayments to the U.S. Government within the 60 days provided by the statute.

129.    Defendants' practice of submitting false claims, as described above, dates back as far, in some cases, as the last ten years.

130.    This course of conduct violates the PPACA.

131.    The U.S. Government, unaware of the falsity of the claims and/or statements upon which it made payments was damaged and continues to be damaged to the extent that the overpaid funds it disburses are not being reported or repaid.

**<u>RELIEF REQUESTED</u>**

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants Covenant Health Care System and Covenant Medical Center, as follows:

        a)    The U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

20

b)  That civil penalties of $10,000 be imposed for each and every false claim that Defendants present to the U.S.;

c)  That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and presenting this case;

d)  That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

e)  That the Relator be awarded the maximum amount allowed to him pursuant to the False Claims Act;

f)  That this Court award such other and further relief as it deems proper.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.

/s/ David M. Blanchard
David M. Blanchard (P67190)
Attorney for Relator
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
dblanchard@nachtlaw.com

Dated: December 10, 2012